ACCEPTED
03-14-00039-CV
4580294
THIRD COURT OF APPEALS
AUSTIN, TEXAS
3/20/2015 12:57:59 PM
JEFFREY D. KYLE
CLERK

NO. 03-14-00039-CV

_____

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
3/20/2015 12:57:59 PM
JEFFREY D. KYLE
Clerk

**IN THE THIRD COURT OF APPEALS**
**AUSTIN, TEXAS**

**TOWER CAR WASH, INC.,**
**Appellant**

**v.**

**WESTPORT GROUP, INC.,**
**Appellee**

_____

On Appeal from the 368th Judicial District Court
of Williamson County, Texas

_____

**RESPONSE TO REQUEST FOR INFORMATION**

_____

TO THE HONORABLE THIRD COURT OF APPEALS

Tower Car Wish, Inc., Appellant, and Westport Group, Inc., Appellee, file this Response pursuant to the Court's order of March 17, 2015, specifically for a copy of the order lifting or terminating the bankruptcy stay as required by Tex, R. App. P. 8.3(a).

Accordingly, please find attached:

Exhibit A:    Order Granting Joint Motion to Compromise Claims of Westport Group, Inc. dated January 14, 2015; and

Exhibit B:    Order Confirming Debtor's Amended Plan of Reorganization Dated November 7, 2014 as Modified.

Respectfully submitted,

SNEED, VINE & PERRY
1104 Rock St.
Georgetown, TX  78626
(512) 930-9775


By:    */s/ Christopher Stanley*
          Christopher Stanley
          State Bar No. 19044400
ATTORNEY FOR APPELLEE


## CERTIFICATE OF SERVICE

I certify that on March 20, 2015, a true and correct copy of the foregoing document was served by electronic transmission on N. West Short at west.short@westshortlawfirm.com.


By:    */s/ Christopher Stanley*
          Christopher Stanley



**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

**Dated: January 15, 2015.**

_____
**TONY M. DAVIS**
**UNITED STATES BANKRUPTCY JUDGE**
_____

**IN THE UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **In Re:** | § | |
| | § | **Case No. 14-10402** |
| **TOWER CAR WASH, INC.** | § | **(Chapter 11)** |
| Debtor | § | |
| | § | |

**ORDER GRANTING**
**JOINT MOTION TO COMPROMISE CLAIMS OF WESTPORT GROUP, INC.**

CAME ON TO BE HEARD on January 14, 2015, the Joint Motion to Compromise Claims of Westport Group, Inc. The Court finds that such motion should be GRANTED.

IT IS THEREFORE ORDERED as follows:

1. The Debtor is authorized to compromise and settle all claims by and between the Debtor and Westport Group, Inc. ("Westport") on the following terms and conditions:

EXHIBIT "A"

a.  Westport shall receive the sum of $75,000.00 cash from the escrow with Independence Title which sum, together with the other consideration referred to in this joint motion, will be in full and final satisfaction of its "Lien Claims" as defined by the Escrow Agreement. The remaining funds in the escrow account shall be released to the Debtor. The Debtor and Westport shall execute all documents reasonably required by Independence Title for the prompt release of such funds. The distribution of such funds shall occur on or before the Effective Date of the Debtor's Plan. Independence Title is specifically authorized and directed to disburse the funds as provided for above.

b.  The Debtor shall execute a note to Westport in the principal amount of $15,000.00. The note shall be payable in monthly installments of interest only based upon an interest rate of 4.25% per annum, with the first payment due on the first day of the calendar month following the Effective Date. All principal and unpaid, accrued interest under the note shall be due and payable thirty-six (36) months after the Effective Date, with there being no penalty for prepayment. The Debtor shall grant a deed of trust to secure the note. The promissory note and deed of trust will be delivered to Westport Group at the time that it signs the documents to allow release of the Escrow Funds by Independence Title, as set forth in (a) above, and will be on the standard forms published by the State Bar of Texas. The Deed of Trust shall be inferior to the liens of the Williamson County Taxing Authorities, Zilker Capital, Texas First Bank and the United States Small Business Administration.

c.  The payments of $75,000 and $15,000 shall fully satisfy the proof of claim filed by Westport.

d.  Within ten days after the Effective Date, the Debtor and Westport shall submit an agreed motion to the Third Court of Appeals to dismiss with prejudice all appeals by either party in Cause No. 03-14-00039-CV, *Tower Car Wash, Inc. v. Westport Group, Inc.*

e.  Within ten days after the Effective Date, Westport Group, Inc. shall execute a release of its judgment lien, to be held by Independence Title in escrow pending delivery to Westport Group of the $75,000 cash and the note and deed of trust referred to above, if not already delivered.

f.  At the time that the $75,000 cash, note and deed of trust are delivered to Westport, the Debtor and Westport Group, Inc. shall execute mutual releases of all claims by or between them and of all claims against the other party's officers, directors, employees, attorneys or affiliates save and except for the obligations under this compromise and settlement and the obligations of Debtor under the note and deed

300412                     Page **2** of **3**

of trust.

   g.  Westport shall support confirmation of Debtor's Amended Plan of Reorganization so long as these terms are incorporated into the Amended Plan.

  2. The compromise approved herein shall obligate the Debtor and Westport to support a Plan of Reorganization containing the terms contained herein. The substantive terms of this compromise shall only become effective upon the approval of a Plan of Reorganization containing these terms.

  3. Although the parties anticipate executing additional documents to implement this agreement, it is the intent of the parties to enter into a final and binding agreement at this time. The parties shall be obligated to execute such other and further documents as may be reasonably required to implement this agreement.

###

Approved:


*/s/Stephen W. Sather*
Stephen W. Sather
Attorney for Debtor

*/s/William H. Daniel*
William H. Daniel
Attorney for Westport Group, Inc.



Order Submitted By:


Stephen W. Sather
Barron & Newburger, P.C.
1212 Guadalupe, Suite 104
Austin, TX 78701



**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

**Dated: February 13, 2015.**

_____
**TONY M. DAVIS**
**UNITED STATES BANKRUPTCY JUDGE**

_____

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | | |
|---|---|---|
| **In Re:** | § | |
| | § | **Case No. 14-10402** |
| **TOWER CAR WASH, INC.** | § | **(Chapter 11)** |
| | § | |
| **Debtor.** | § | |

### ORDER CONFIRMING DEBTOR'S AMENDED PLAN OF REORGANIZATION
### DATED NOVEMBER 7, 2014 AS MODIFIED

CAME ON for hearing on the 11th day of February, 2015, confirmation of the Debtor's Amended Plan of Reorganization Dated November 7, 2014. The Debtor announced that it had reached agreements with Westport Group, Inc. and the University of Texas which are reflected in Motions to Compromise filed with the Court (Dkt. #126 and #147) and with Texas First Bank. Texas First Bank announced that based upon the agreement with the Debtor that it was withdrawing its objection and supported confirmation of the Plan. The Debtor proferred the testimony of Robert E. Tesch, the Debtor's President, which proffer is filed at Dkt. #163.

With the announcements and changes (collectively "modifications") discussed at the hearing on confirmation, the Court finds that the Amended Plan of Reorganization as modified

EXHIBIT "B"

meets the requirements set forth in 11 U.S.C. §§ 1122, 1123, and 1129.  Specifically, the Court finds that:

1.       The Plan complies with the applicable provisions of title 11.

2.       The Debtor as Plan proponent has complied with the applicable provisions of title 11.

3.       The Plan has been proposed in good faith for the purpose of repaying the debts of the Debtor and not by any means forbidden by law.

4.       Any payment made or to be made by the Debtor for services or for costs and expenses in or in connection with the case, or in connection with the plan and incident to the case, has been approved by, or is subject to the approval of the Court as reasonable.

5.       The Debtor has disclosed the identity of persons who are to serve in management of the Debtor after confirmation of the Plan and their continued service is in the best interest of the Debtor and creditors.

6.       Each creditor has either accepted the Plan or will receive more under the Plan than it would receive in a chapter 7 liquidation.

7.       Each class of claims has either accepted the plan, did not vote or is unimpaired.

8.       All priority creditors will receive the treatment required by 11 U.S.C. §1129(a)(9).

9.       At least one class of claims that is impaired under the Plan has accepted the Plan without counting votes of insiders.    Specifically, the Plan has been accepted by Classes 3, 4, 5, 6, 7, 8, 9 and 10.   Of these classes, only classes 8 and 10 are composed of insiders.

10.       Confirmation of the Plan is not likely to be followed by liquidation or the need for further financial reorganization.

11.       All fees under section 1930 of title 28 have been paid or will be paid as they accrue.

12.       The Debtor does not sponsor a retirement plan.

13.       Debtor is a corporation and not an individual.  It is not under a domestic support obligation.

14.       Any transfers under the Plan will be made in accordance with applicable non-bankruptcy law.

15.       The modifications described on Exhibit A do not materially affect the treatment of

any creditor that has not agreed to the modifications and do not require further disclosure or solicitation.

It is therefore

ORDERED that the Amended Plan of Reorganization dated November 7, 2014, ("Amended Plan") attached hereto and incorporated herein as Exhibit "B" as filed by the Debtor with the modifications reflecting the agreements set forth in open court on February 11, 2015, as set forth in Exhibit "A", attached hereto and made a part hereof, shall become the Plan confirmed herein. It is further

ORDERED that Debtor's Amended Plan of Reorganization dated November 7, 2014, as modified be and hereby is CONFIRMED. It is further

ORDERED that the following injunctive language from the Final Judgment Incorporating Findings of Fact and Conclusions of Law in Case No. A-11-CA-125-LY is hereby incorporated into and made a part of this Confirmation Order:

Defendants Tower Car Wash, Inc., cl/b/a Tower Express Car Wash, and Tesch & Associates, Inc., and Robert E. Tesch, their officers, agents, servants, employees, and attorneys, and other persons who are in active concert or participation with any of them, are ENJOINED AND RESTRAINED from using a University tower replica, a logo depicting the University tower, an orange lighting scheme in or on any new logo, tower structure, or depiction and any other mark or tower structure or depiction that is confusingly similar to or likely to cause dilution of the University's tower, or the University's tower marks, and from any attempt to retain any part of the goodwill misappropriated from the University.

It is further

ORDERED that Debtor shall serve a Notice of Confirmation on all creditors which shall set forth the amount of compensation anticipated to be paid to insiders under the Plan. It is further

ORDERED that Debtor shall file an Application for Final Decree as soon as practicable after the Plan has been substantially consummated and the estate fully administered pursuant to Fed.R.Bankr. P. 3022.

# # #

APPROVED:

*/s/Stephen W. Sather*
Stephen W. Sather
Attorney for Debtor

*/s/Kyle Dickson*
Kyle Dickson
Attorney for Texas First Bank

*/s/Sarah Foster*
Sarah Foster
Attorney for Westport Group, Inc.

*/s/Jered Matthysse*
Jered Matthysse
Attorney for Board of Regents,
University of Texas

*/s/Valerie Wenger*
Valerie Wenger
Trial Attorney,
U.S. Trustee's Office

Submitted by:

Stephen W. Sather
BARRON & NEWBURGER, P.C.
1212 Guadalupe Street, Suite 104
Austin, Texas 78701
(512) 476-9103

# Exhibit A
## MODIFICATIONS TO AMENDED PLAN AS FILED
## INCORPORATED INTO PLAN BY CONFIRMATION ORDER

1.   The following treatment is substituted for Class 5:

4.05    Class 5—Secured Claim of Texas First Bank

4.05.01          Class 5 consists of the Secured Claim of Texas First Bank.  The Debtor has scheduled the Claim of Texas First Bank in the amount of $1,543,797.59.

4.05.02          Class 5 shall retain its liens.  Unless the Court determines otherwise, the Class 5 creditor shall be deemed to hold the first priority secured claim on Debtor's real and personal property, subject only to the claims of taxing authorities and successors-in-interest to the claims of taxing authorities for ad valorem property taxes.

4.05.03          The Claim of Texas First Bank for principal in the amount of $1,539,909.10 (Principal Note") shall accrue interest at a rate of 4.75% for the first eighteen months following the Effective Date.  At the conclusion of eighteen months, the interest rate shall adjust to the Wall Street Journal Prime + 1.75% and shall be adjusted every twenty-four months thereafter.

4.05.04        The Principal Note shall be payable in twenty-four installments of interest only beginning on the Effective Date.   Thereafter, the Principal Note shall be payable in 240 equal installments of principal and interest.

4.05.05        Texas First Bank shall also be entitled to a claim for post-petition interest accrued at the contract rate less adequate protection payments. ("Interest Note").  The amount of the Interest Note shall be $59,151.24.    The Interest Note shall be payable in 24 payments of $1,000 with a balloon payment of $35,151.24 due after 24 months.

4.05.06          Texas First Bank shall also be entitled to a claim for post-petition attorneys' fees and costs in the amount of $15,000.    ("Fee Note").   The Fee Note shall be payable in 30 payments of $500.00 without interest beginning one month after the balloon payment on the Interest Note.

4.05.07        The Principal Note, the Interest Note and the Fee Note may be evidenced by documents in substantially the same form as the existing loan documents.   Any such documents shall be prepared at the expense of Texas First Bank.

4.05.08          The escrow for ad valorem taxes provided for in para.  5.06 shall be maintained at Texas First Bank so long as there is a balance owing on either the Principal Note or the Interest and Fees Note.   The escrow shall be based upon 1/12 of the estimated amount of ad valorem taxes for the current year.  If an estimate of the current year's taxes is not available, then the escrow shall be based upon the amount of the prior year's taxes.

4.05.09    Nothing in para. 8.04 shall be deemed to modify the guaranty of Robert E. Tesch.    Robert E. Tesch shall continue to guaranty the debts owed to Texas First Bank as modified by this Plan.

4.05.10    Class 5 is impaired.

2.   The following treatment is substituted for Class 7:

4.07    **Class 7—Secured Claim of Westport Group, Inc.**

4.07.01    Class 7 consists of the Secured Claim of Westport Group, Inc.    The Debtor has scheduled the claim of Westport Group, Inc. at $268,536.78.  The claim of Westport Group, Inc. is disputed.

4.07.02    The following terms shall govern the treatment of the Class 7 claim:

a.    The Debtor and Westport agree that Westport shall receive the sum of $75,000.00 cash from the escrow with Independence Title which sum, together with the other consideration referred to in the Joint Motion to Compromise, will be in full and final satisfaction of its "Lien Claims" as defined by the Escrow Agreement dated July 29, 2011.    The remaining funds in the escrow account shall be released to the Debtor. The Debtor and Westport shall execute all documents reasonably required by Independence Title for the prompt release of such funds. The distribution of such funds shall occur as close to the Effective Date under the Plan of Reorganization as shall be practicable. Independence Title is specifically authorized to disburse the funds as provided for above.

b.    The Debtor shall execute a note to Westport in the principal amount of $15,000.00.  The note shall be payable in monthly installments of interest only based upon an interest rate of 4.25% per annum, with the first payment due on the first day of the calendar month following the Effective Date.   All principal and unpaid, accrued interest under the note shall be due and payable thirty-six (36) months after the Effective Date, with there being no penalty for prepayment.   The Debtor shall grant a deed of trust to secure the note. The promissory note and deed of trust will be delivered to Westport Group at the time that it signs the documents to allow release of the Escrow Funds by Independence Title, as set forth in (a) above, and will be on the standard forms published by the State Bar of Texas.   The Deed of Trust shall be inferior to the liens of the Williamson County Taxing Authorities, Zilker Capital, Texas First Bank and the United States Small Business Administration.

c. The payments of $75,000 and $15,000 shall fully satisfy the proof of claim filed by Westport.

d. Within ten days after the Effective Date, the Debtor and Westport shall submit an agreed motion to the Third Court of Appeals to dismiss with prejudice all appeals by either party in Cause No. 03-14-00039-CV, *Tower Car Wash, Inc. v. Westport Group, Inc.*

e. Within ten days after the Effective Date, Westport Group, Inc. shall execute a release of its judgment lien, to be held by Independence Title in escrow pending delivery to Westport Group of the $75,000 cash and the note and deed of trust referred to above, if not already delivered.

f. At the time that the $75,000 cash, note and deed of trust are delivered to Westport, the Debtor and Westport Group, Inc. shall execute mutual releases of all claims by or between them and of all claims against the other party's officers, directors, employees, attorneys or affiliates save and except for the obligations under this compromise and settlement and the obligations of Debtor under the note and deed of trust.

g. Westport shall support confirmation of Debtor's Amended Plan of Reorganization so long as these terms are incorporated into the Amended Plan.

4.07.03 Class 7 is impaired.

3. The following treatment is substituted for Class 9:

## 4.09 Class 9—Claim of the Board of Regents of the University of Texas

4.09.01 Class 9 consists of the Allowed Claim of the Board of Regents of the University of Texas. The Board of Regents has filed a proof of claim in the amount of $78,227.09. The Board of Regents also has unliquidated claims for injunctive relief.

4.09.02 The following shall govern the treatment of the Class 9. For purposes of this paragraph, the term "Tesch Parties" refers to the Debtor, Robert E. Tesch and Tesch & Associates, Inc.

a. The Tesch Parties acknowledge the validity of the University's marks, and that they are valid and famous marks.

b. The Tesch Parties will not use the Debtor's former logo, the University's marks or any confusingly similar marks, and any orange color scheme on its tower, logo or signage, or in any other prominent manner in connection with the car wash or its promotional material. The Debtor shall not light its tower in an orange color and will not re-

       attach the former cupola to the tower.

c.     The Tesch Parties will modify the tower to eliminate the windows in the middle and lower portions of the tower. The modification will be accomplished by December 1, 2015.

d.     The University will grant the Tesch Parties a credit of $20,000 against the monetary relief contained in the Final Judgment in the united States District Court in consideration for making the modifications provided above.

e.     In satisfaction of the monetary relief contained in the Final Judgment, the Debtor will make three payments of $17,000 with the first payment due on June 15, 2015 and the next payments due on June 15, 2016 and June 15, 2017.

f.     The Tesch Parties will continue to guarantee the monetary payment to be made by the Debtor.

g.     Within ten days after the Effective Date of the Plan, the Tesch Parties and the University will submit an agreed motion to the Fifth Circuit Court of Appeals to dismiss with prejudice all appeals by either party in Cause No. 14-50130, *Tower Car Wash, Inc. v. Board of Regents, the University of Texas System*.

h.     The Debtor will incorporate the terms of this Settlement Agreement into its Plan of Reorganization and the Confirmation Order will incorporate the terms of this Settlement Agreement and the District Court's injunction.

i.     The University will support confirmation of Debtor's Amended Plan of Reorganization so long as these terms are incorporated into the Amended Plan.

j.     Each party will bear its own attorneys' fees.

4.09.03     The Class 9 creditor is impaired.

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **TOWER CAR WASH, INC.** | § | **CASE NO. 14-10402-tmd** |
| | § | **(CHAPTER 11)** |
| **DEBTOR** | § | |

### AMENDED PLAN OF REORGANIZATION DATED NOVEMBER 7, 2014

Barbara M. Barron
Stephen W. Sather
**BARRON & NEWBURGER, P.C.**
1212 Guadalupe, Suite 104
Austin, Texas 78701
(512) 476-9103
(512) 476-9253 (Facsimile)

ATTORNEYS FOR DEBTOR-IN-POSSESSION

# TABLE OF CONTENTS

ARTICLE I - DEFINITIONS AND USE OF TERMS ............................................................................. 1
   1.01   **Defined Terms** ..................................................................................................... 1
   1.02   **Number and Gender of Words** ......................................................................... 5
   1.03   **Terms Defined in the Bankruptcy Code** ........................................................ 5
   1.04   **Headings** ............................................................................................................ 5
   1.05   **Time Computation** ............................................................................................ 5
ARTICLE II - CONCEPT OF PLAN .............................................................................................. 6
   2.01   **Generally** ............................................................................................................ 6
ARTICLE III - PROVISIONS APPLICABLE TO ALL CLAIMS ......................................................... 6
   3.01   **Treatment of Claims** ......................................................................................... 6
   3.02   **Allowed Claims** ................................................................................................. 6
   3.03.   **Amount of Claims** ............................................................................................. 6
   3.04.   **Allowance of Post-Petition Interest, Fees and Costs** ..................................... 6
   3.05.   **Filing of Claims Arising From Rejection of Unexpired Leases or Executory Contracts.** ..................... 6
   3.06   **Filing of Administrative Claims** ...................................................................... 7
   3.07   **Cure Claims** ....................................................................................................... 7
   3.08   **Claims Arising from Avoidable Transfers** ...................................................... 7
   3.09   **Filing of Requests for Post-Petition Fees or Costs** ........................................ 7
   3.10   **Objections to Claims** ......................................................................................... 7
   3.11   **Distributions on Disputed Claims** .................................................................... 7
   3.12   **Satisfaction of Liens** ......................................................................................... 7
   3.13   **Third Party Obligations** ................................................................................... 7
ARTICLE IV – CLASSIFICATION AND TREATMENT OF CLASSES UNDER THE PLAN .............................. 8
   4.01   **Class 1—Administrative Expense Claims** ....................................................... 8
   4.02   **Class 2—Priority Claims** .................................................................................. 8
   4.03   **Class 3—Secured Claims of Williamson County Taxing Entities** ................. 9
   4.04   **Class 4—Secured Claim of Zilker Capital** ..................................................... 9
   4.05   **Class 5—Secured Claim of Texas First Bank** ............................................... 10
   4.06   **Class 6—Secured Claim of Texas Certified Development Group/Small Business Administration** .. 10
   4.07   **Class 7—Secured Claim of Westport Group, Inc.** ......................................... 11
   4.08   **Class 8—Unsecured Claims** ............................................................................ 11
   4.09   **Class 9—Ownership Interest of TCW** ............................................................ 13
ARTICLE V - MEANS FOR IMPLEMENTATION OF PLAN ............................................................ 13
   5.01   **Source of Funds** ............................................................................................... 13
   5.02   **Sale of Debtor's Property** ............................................................................... 13
   5.03   **Use of Funds Held Pursuant to Escrow Agreement** ..................................... 13
   5.04   **Re-Capitalization of Debtor** ........................................................................... 14
   5.05   **Post-Confirmation Management of the Debtor** ............................................. 14
   5.06   **Compliance with District Court Injunction** ....................... **Error! Bookmark not defined.**
   5.07   **Appeal** .............................................................................................................. 14
   5.08   **Methodology for Disbursement Under the Plan** ........................................... 14
ARTICLE VI - TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES .......................... 14
   6.01   **Reservation of Rights** ..................................................................................... 14
   6.02   **Assumption of Executory Contracts and Unexpired Leases** ....................... 15
   6.03   **Rejection of Executory Contracts and Unexpired Leases** ........................... 15
   6.04   **Bar Date for Claims Based on Rejection** ...................................................... 15
   6.05   **Limitation on Claims Based on Rejection** ..................................................... 15
ARTICLE VII - PROVISIONS FOR THE RETENTION, ENFORCEMENT, SETTLEMENT, OR ADJUSTMENT
OF CLAIMS BELONGING TO THE DEBTOR AND THE ESTATE INCLUDING PREFERENCES AND
CONVEYANCES .................................................................................................................. 15
   7.01   **Avoidance Actions.** ......................................................................................... 15
   7.02   **Other Actions** .................................................................................................. 16

**ARTICLE VIII - EFFECT OF CONFIRMATION** ................................................................. 16

    8.01    **Discharge** ................................................................................................................16

    8.02.   **Status of Property of the Estate After Confirmation.**.............................................16

    8.03.   **Binding Nature of Plan** ..........................................................................................16

    8.04.   **Permanent Injunction** ............................................................................................16

**ARTICLE IX - MODIFICATION OF PLAN** ........................................................................ 17

    9.01    **Modification to the Plan Prior to Confirmation**......................................................17

**ARTICLE X - POST-CONFIRMATION PROCEDURE** ......................................................... 17

    10.01.  **Application for Final Decree**....................................................................................17

    10.02.  **U.S. Trustees Matters** .............................................................................................17

**ARTICLE XI - DEFAULT AND OTHER RELATED PROVISIONS** ....................................... 17

    11.01.  **General** ....................................................................................................................17

**ARTICLE XII - RETENTION OF JURISDICTION** .............................................................. 18

    12.01  **Allowance of Claims** ...............................................................................................18

    12.02  **Proceedings Related to Executory Contracts and Unexpired Leases**......................18

    12.03  **Plan Interpretation** .................................................................................................18

    12.04  **Plan Implementation** ..............................................................................................18

    12.05  **Plan Modification**...................................................................................................18

    12.06  **Adjudication of Controversies** ................................................................................18

    12.07  **Injunctive Relief**.....................................................................................................18

    12.08  **Interpleader Action** ................................................................................................19

    12.09  **Correct Minor Defects**............................................................................................19

    12.10  **Authorization of Fees and Expense** .........................................................................19

    12.11  **Post-Confirmation Orders Regarding Confirmation** ...............................................19

    12.12  **Final Decree**...........................................................................................................19

    12.13  **Reopening** ...............................................................................................................19

**ARTICLE XIII – MISCELLANEOUS PROVISIONS** .......................................................... 19

    13.01  **Request for Relief Under 11 U.S.C. § 1129(b)** .........................................................19

    13.02  **Revocation** ..............................................................................................................19

    13.03  **Effect of Withdrawal or Revocation** .......................................................................19

    13.04  **Entire Agreement**...................................................................................................19

    13.05  **Section 1146 Exemption** ..........................................................................................20

    13.06  **Provisions Governing Distributions** ........................................................................20

    13.08  **Governing Law**.......................................................................................................20

    13.09  **Post-Confirmation Noticing**...................................................................................21

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

IN RE: §
 §
TOWER CAR WASH, INC. § CASE NO. 14-10402-tmd
 § (CHAPTER 11)
DEBTOR §

### PLAN OF REORGANIZATION DATED NOVEMBER 7, 2014

 **Tower Car Wash, Inc., the Debtor in this case ("TCW")** proposes the following Plan of Reorganization ("Plan") Dated November 7, 2014, pursuant to chapter 11, title 11, United States Code ("Bankruptcy Code" or "Code") on behalf of the Debtor.

### ARTICLE I
### DEFINITIONS AND USE OF TERMS

 1.01 **Defined Terms.** Unless the context otherwise requires, capitalized terms shall have the meanings set forth in this Section 1.01.

 1.01.01 **Administrative Expense Claim** means an administrative expense or Claim described in 11 U.S.C. § 503 and entitled to administrative priority pursuant to 11 U.S.C. § 507(a)(1), including but not limited to Claims for compensation of professionals made pursuant to 11 U.S.C. §§ 330 and 331, and all fees and charges assessed against Debtor and Debtor's property under 28 U.S.C. § 1930, which arose after March 17, 2014.

 1.01.02 **Administrative Tax Claim** means an Unsecured Claim by a governmental unit for taxes (including interest or penalties related to such taxes) for any tax year or period, all or a portion of which occurs or falls within the period from and including the Petition Date through the Effective Date.

 1.01.03 **Allowed Claim** means a Claim against the Debtor allowable under the Bankruptcy Code to the extent that (i) a proof of Claim, proof of Interest, or request for payment was timely filed or, with leave of the Bankruptcy Court, late filed, and as to which no objection has been timely filed or, if filed, is allowed by a Final Order, unless otherwise provided in this Plan or (ii) the Claim is scheduled and not listed as disputed, contingent or unliquidated, and to which no objection has been timely filed or, if filed, is allowed by a Final Order.

 1.01.04 **Allowed Secured Claim** means an Allowed Claim secured by a lien, security interest or other charge or interest in property in which the Debtor has an interest, to the

1

extent of the value thereof as determined in accordance with 11 U.S.C. § 506(a).

1.01.05 **Bankruptcy Code** or **Code** means the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.*

1.01.06 **Bankruptcy Court** means the United States Bankruptcy Court for the Western District of Texas or such other Court that may have jurisdiction with respect to Debtor's chapter 11 case, including the States District Court for the Western District of Texas to the extent reference of the chapter 11 Case is withdrawn.

1.01.07 **Bankruptcy Rules** means the Federal Rules of Bankruptcy Procedure, as amended, promulgated under 28 U.S.C. § 2075, and the Local Rules of the Bankruptcy Court, as applicable from time to time to the Debtor's chapter 11 Case.

1.01.08 **Bar Date** means the date subsequent to which a proof of pre-petition Claim may not timely be filed or the date by which proofs of claims held by governmental agencies must be filed.

1.01.09 **Business Day** means any date except Saturday, Sunday or any other day on which commercial banks in Austin, Texas, are authorized by law to be closed for business.

1.01.10 **Case** means this chapter 11 bankruptcy case in this Bankruptcy Court.

1.01.11 **Claim** means (i) any right to payment from the Debtor, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or (ii) any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment from the Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

1.01.12 **Claimant** means any person or entity having or asserting a Claim in this case.

1.01.13 **Class** or **Classes** mean all of the holders of Claims or Interests that the Debtor has designated pursuant to 11 U.S.C. § 1123(a)(1) as having substantially similar characteristics as described in Article IV of this Plan.

1.01.14 **Confirmation** means the entry by the Bankruptcy Court of a Confirmation Order confirming this Plan.

1.01.15 **Confirmation Date** means the date on which the Confirmation Order is entered.

1.01.16 **Confirmation Order** means the Order of the Court confirming the Plan pursuant to 11 U.S.C. § 1129.

2

1.01.17 **Contested** when used with respect to a Claim means a Claim against the Debtor that (a) is listed in the Debtor's Schedules of Assets and Liabilities as disputed, contingent or unliquidated; (b) is the subject of a pending action in a forum other than the Bankruptcy Court unless such Claim has been determined by Final Order in such other forum and Allowed by Final Order of the Bankruptcy Court; or (c) has had or is subject to an objection being timely filed and has not been denied by Final Order. To the extent an objection related to the allowance of only a part of a Claim, such Claim shall be a Contested Claim only to the extent of the Objection.

1.01.18 **Creditor** shall have the meaning specified by 11 U.S.C. § 101(9) of the Code.

1.01.19. **Cure Claim** means the amount necessary to cure any default or arrearage, together with the amount necessary to compensate for damages suffered as a result of such default or arrearage, on an unexpired lease or executory contract which has been assumed pursuant to 11 U.S.C. § 365.

1.01.20 **Debtor** means TCW, the Debtor in the above-captioned chapter 11 Cases.

1.01.21 **Disputed Claim** means any Claim as to which the Debtor or any other party in interest has interposed a timely objection or request for estimation in accordance with the Bankruptcy Code and the Bankruptcy Rules, which objection or request for estimation has not been withdrawn or determined by Final Order.

1.01.22 **Effective Date** means the first day of the first full month after the Confirmation Order becomes a Final Order.

1.01.22. **Estate** means the estate created pursuant to 11 U.S.C. § 541 with respect to the Debtor.

1.01.23 **Equity Interest** means an equity security, as defined in 11 U.S.C. §101(16), including but not limited to all common stock, preferred stock, stock options and warrants, all rights associated therewith, and all Claims arising from or relating to such Equity Interest, including but not limited to Claims for rescission.

1.01.24 **Fee Claim** means a Claim under 11 U.S.C. § 330 or 503 for allowance of compensation and reimbursement of expenses to professionals in the Debtor's Case.

1.01.25 **Filed** means delivered to the Clerk of the Bankruptcy Court or electronically filed.

1.01.26 **Final Order** means an Order or judgment entered by the Bankruptcy Court or any other court exercising jurisdiction over the subject matter and the parties as to which the time to appeal has expired and as to which a stay pending appeal has not been granted.

3

1.01.27 **General Unsecured Claim** means an Unsecured Claim that is not entitled to priority under 11 U.S.C. § 507(a).

1.01.28 **Impaired** means the treatment of an Allowed Claim pursuant to the Plan *unless,* with respect to such Claim, either (a) the Plan leaves unaltered the legal, equitable and contractual rights to which such Claim entitles the holder of such Claim or (b) notwithstanding any contractual provision or applicable law that entitles the holder of such Claim to demand or receive accelerated payment of such Claim after occurrence of a default, the Debtor (i) cures any default that occurred before or after the commencement of the Case on the Petition Date, other than default of the kind specified in 11 U.S.C. § 365(b)(2), (ii) reinstates the maturity of such Claim as such maturity existed before such default, (iii) compensates the holder of such Claim for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law, and (iv) does not otherwise alter the legal, equitable or contractual rights to which such Claim entitles the holder of such Claim; or (c) the Plan provides that on the Effective Date the holder of such claim receives, on account of such Claim, cash equal to the Allowed Amount of such Claim.

1.01.29 **Lien** shall mean a contractual or statutory lien against an interest of the Debtor in real or personal property.

1.01.30. **Market Rate of Interest** means an interest rate sufficient to provide the present value of a claim pursuant to 11 U.S.C. §§ 1129(a)(9) or 1129(b) as may be appropriate. A Market Rate of Interest shall be 4.25% unless the parties agree on another rate or the Court determines otherwise with regard to a specific Class of Claims.

1.01.31 **Oversecured Claim** means a Claim which is secured by property which is valued at more than the amount of the Claim. An Oversecured Claim shall be entitled to receive post-petition interest at the non-default contract rate and may also receive post-petition fees and costs if authorized by a contract.

1.01.32 **Person** means an individual, partnership, or corporation, but does not include a governmental unit unless the government unit acquires an asset as a result of operation of a loan guarantee agreement, or as receiver or liquidating agent, in which case such governmental unit shall be considered a person for purposes of 11 U.S.C. § 1102 Code.

1.01.33. **Petition Date** means March 17, 2014, the date on which the Debtor filed its petition for relief in this Case.

1.01.34. **Plan** means this Plan of Reorganization, as it may be amended, modified or supplemented by the Debtor from time to time as permitted herein and by the Bankruptcy Court.

1.01.35 **Pre-petition** means prior to the Petition Date.

1.01.36 **Priority Creditor** means a Creditor whose Claim is entitled to priority under 11 U.S.C. § 507.

4

1.01.37     **Pro-Rata** means proportionately, based on the percentage that the amount of an Allowed Claim within a particular Class bears to the aggregate amount of all Allowed Claims in such Class.

1.01.38     **Property of the Estate** means all property in which the Debtor holds a legal or an equitable interest, including all property described in 11 U.S.C. § 541.

1.01.39     **Rejection Claim** means any Claim arising pursuant to 11 U.S.C. § 502(g) by reason of rejection by the Debtor of an executory contract or unexpired lease pursuant to 11 U.S.C. § 365 or 1123(b)(2).

1.01.40     **Reorganized Debtor** means the Debtor-in-Possession after the Effective Date of the Plan.

1.01.41     **Secured Claim** means any Claim secured by a lien, security interest, or other charge or interest, in property in which the Debtor has an interest to the extent of the value thereof as determined in accordance with 11 U.S.C. § 506(a).

1.01.42     **Secured Creditor** or **Secured Claimant** means any Claimant holding a Secured Claim.

1.01.43     **TCW** means Tower Car Wash, Inc., the Debtor in this case.

1.01.44     **Voidable Transfer** means all transfers voidable under 11 U.S.C. §§ 544, 545, 547, 548, 549 and/or 550 or any other state or federal transfer.

1.02     **Number and Gender of Words.**  Whenever the singular number is used, it shall include the plural, and the plural shall include the singular, as appropriate to the context.  Words of any gender shall include each other gender where appropriate.

1.03     **Terms Defined in the Bankruptcy Code.**  Capitalized terms not specifically defined in Section 1.01 of the Plan shall have the definitions given those terms, if applicable, in the Bankruptcy Code.

1.04     **Headings.**  The headings and captions used in the Plan are for convenience only and shall not be deemed to limit, amplify or modify the terms of this Plan nor affect the meaning thereof.

1.05     **Time Computation.**  In computing any time prescribed herein the provision of Fed. R. Bankr. P. 9006(a) shall apply.

## ARTICLE II
## CONCEPT OF PLAN

2.01 **Generally.** The Plan contemplates the continued operation of the TCW property and the payment of claims from the Debtor's cash flow.

## ARTICLE III
## PROVISIONS APPLICABLE TO ALL CLAIMS

3.01 **Treatment of Claims.** This Plan is intended to resolve all Claims against the Debtor and/or property of the Debtor of whatever character, whether contingent or liquidated, or whether allowed by the Bankruptcy Court pursuant to 11 U.S.C. § 502(a). However, only Allowed Claims will receive treatment afforded by the Plan. The Plan is designed to insure that Claimants shall receive at least as much pursuant to this Plan as they would receive in liquidation pursuant to chapter 7 of the Bankruptcy Code.

3.02 **Allowed Claims.** To receive a distribution under the Plan, a Creditor must have an Allowed Claim.

3.03. **Amount of Claims.** If the Debtor has scheduled a Claim and has not indicated that such Claim is disputed, contingent, or unliquidated, then the amount scheduled by the Debtor shall control unless the Creditor files a Proof of Claim in a different amount or a party in interest files an objection to the scheduled claim. If a creditor files a Proof of Claim, then the amount stated in the Proof of Claim shall control unless a party in interest files an objection to the Claim. If a party in interest files an objection to a Proof of Claim or a scheduled claim, then the amount determined by the Court in a Final Order shall control.

3.04. **Allowance of Post-Petition Interest, Fees and Costs.** Unless otherwise provided, a Claim shall not be entitled to post-petition interest, fees or costs. An Oversecured Claim shall be entitled to interest at the non-default contract or statutory rate from the date of the Petition until the Confirmation Date. An Oversecured Claim arising under a contract shall be entitled to post-petition fees and costs if the contract so provides and if an application for allowance of post-petition fees and costs is timely filed and approved by the Court by a Final Order. A Claim may be determined to be an Oversecured Claim if so designated by the Plan or if determined by the Court by a Final Order.

3.05. **Filing of Claims Arising From Rejection of Unexpired Leases or Executory Contracts.** Any claims arising from the rejection of unexpired leases or executory contracts shall be filed by the date specified in the order rejecting such lease or contract. If no date is specified, the date for filing a rejection claim shall be deemed to be the later of twenty-eight (28) days after the Effective Date or twenty-eight (28) days after entry of the order rejecting the lease or contract.

6

3.06    **Filing of Administrative Claims.**  Any requests for allowance of Administrative Expense Claims shall be filed within twenty-eight (28) days after the Effective Date or shall be barred.

3.07    **Cure Claims.**  Any Cure Claims shall be filed within twenty-eight (28) days after the Effective Date or shall be barred unless otherwise agreed to by the parties.

3.08    **Claims Arising from Avoidable Transfers.**  A person who is found to have received a voidable transfer shall have twenty-eight (28) days following the date from which the order ruling that such transfer is voidable or approving the settlement of a suit on a voidable transfer becomes a Final Order in which to file a Claim in the amount of the settlement or the avoided transfer, which is less.

3.09.    **Filing of Requests for Post-Petition Fees or Costs.**  Any requests for allowance of post-petition fees or costs pursuant to 11 U.S.C. § 506(b) shall be filed within twenty-eight (28) days after the Effective Date or shall be barred.

3.10    **Objections to Claims.**  Any party authorized by the Bankruptcy Code may object to the allowance of a Pre-Petition Claim at any time prior to forty-two (42) days after the later of the Effective Date or twenty-eight (28) days after such claim is filed.  Any Proof of Claim filed after the bar date(s) set by the Court shall be of no force and effect and shall be deemed disallowed.  All Contested Claims shall be litigated to Final Order; *provided, however,* that the Debtor may compromise and settle any Contested Claim, subject to the approval of the Bankruptcy Court.

3.11    **Distributions on Disputed Claims.**  No distributions under this Plan shall be made to the holder of a Claim that is in dispute, unless and until such Claim becomes an Allowed Claim.  When and if a disputed Claim becomes an Allowed Claim, Debtor shall at the next scheduled distribution under the Plan to the Class of Creditors into which the Claim falls pay the newly Allowed Claim a sum sufficient to bring that Claimant *in pari passu* with the other Claimants in the Class.  If a Claim is disputed in whole or in part because the Debtor asserts a right of offset against such Claim or recoupment against the holder of such Claim, then, if and to the extent the Claim giving rise to the offset or recoupment is sustained by Final Order, the Claim in dispute shall be reduced or eliminated and, if applicable, the holder of such Claim shall be required to pay the amount of such offset or recoupment, less the amount of the Allowed Claim.  In addition, any party authorized by the Bankruptcy Code may request that the Court estimate any contingent, disputed or unliquidated Claim pursuant to 11 U.S.C. § 502(c) at any time.

3.12    **Satisfaction of Liens.**  Whenever this Plan provides that a creditor shall retain its liens, the creditor shall retain its liens until the Secured Claim provided by this Plan has been satisfied according to the terms of this Plan.  Once payments on the Secured Claim have been completed, the creditor shall release its lien.

3.13    **Third Party Obligations.  Except as otherwise provided herein, to the extent that any third party is jointly liable with the Debtor upon a Claim, whether by contract or**

7

**by operation of law, such obligation shall remain in force with respect to the Claim as modified by this Plan but not otherwise. All guarantees and other obligations shall be deemed modified to reflect the restructuring of the primary obligations under this Plan. To the extent that a Claim is classified in more than one class, the liability of the third party shall extend to the obligations under each applicable class.**

**ARTICLE IV**
**CLASSIFICATION AND TREATMENT OF CLASSES UNDER THE PLAN**

4.01    **Class 1—Administrative Expense Claims**

4.01.01          Administrative claims consist of expenses incurred during the Chapter 11 proceeding prior to confirmation which are approved by the Court and expenses incurred in operating the Debtor's business.  Most administrative expense claims consist of claims by professionals employed by the Bankruptcy Estate.  The Debtor is aware of the following Class 1 Administrative Claims:

| | |
|---|---|
| Barron & Newburger, P.C. | Attorneys |
| U.S. Trustee | Statutory Fees |

The amounts payable to Barron & Newburger, P.C. represents professional fees incurred during the bankruptcy and must be approved by the court.  The amount payable to the U.S. Trustee is a required fee for chapter 11 Debtor.

4.01.02          No Administrative Expense Claims shall be allowed except pursuant to Court order, except for U.S. Trustee fees which shall be payable as provided by law.

4.01.03          U.S. Trustee fees shall be paid as incurred on a quarterly basis until the case is closed, converted or dismissed.

4.01.04          The attorney's fees of Barron & Newburger, P.C. which are by the allowed Court shall be paid on the later of the Effective Date or when approved by the Court unless otherwise agreed by the parties.

4.01.05          Class 1 is not impaired.

4.02    **Class 2—Priority Claims**

4.02.01          Class 2 consists of Priority Claims.

4.02.02          The IRS has filed an amended proof of claim in the amount of $787.80.

4.02.03          The Debtor shall pay the  IRS claim in the amount of $787.80 on the Effective Date.   .

8

4.02.04 Class 2 is not impaired.

### 4.03 **Class 3—Secured Claims of Williamson County Taxing Entities**

4.03.01 Class 3 consists of the Secured Claims of Ad Valorem Taxing Entities filed against TCW. The Debtor is aware of the following claims:

| Creditor | Schedules | POC | Disputed? | Comments |
|---|---|---|---|---|
| Williamson County | $34,482.61 $8,318.17 | $85,297.74 | | Proof of Claim includes $41,851.73 in 2014 taxes which are last payable without penalty on 1-31-15. |

4.03.02 The Class 3 creditor will retain its liens. The Allowed Claim will accrue interest at the statutory rate of 12% from the Petition Date until paid as provided by Texas law. The Class 3 and Class 4 creditors will be deemed to have the first priority lien upon the Debtor's real property on a *pari passu* basis unless the Court determines otherwise.

4.04.03 The Class 3 claim for 2013 taxes will be paid in fifty-two (52) equal installments of principal and interest including interest at the statutory rate of 12%; provided, however, that if funds from the Escrow Account become available, such amounts will be applied pro rata between the Class 3 and Class 4 claims and will be applied to payments in inverse order of maturity.

4.03.04 Ad valorem taxes for 2014 will be paid on or before January 31, 2015.

4.03.05 Class 3 is impaired.

### 4.04 **Class 4—Secured Claim of Zilker Capital**

4.04.01 Class 4 consists of the Secured Claim of Zilker Capital.

4.04.02 The Debtor has scheduled the Secured Claim of Zilker Capital in the amount of $46,214.50.

4.04.03 The Class 4 creditor shall retain its liens. The Allowed Claim will accrue interest at the contract rate until paid. The Class 3 and Class 4 creditors will be deemed to have the first priority lien upon the Debtor's real property on a *pari passu* basis unless the Court determines otherwise.

4.04.04 The Class 4 claim shall be paid in fifty-two (52) equal installments of principal and interest including interest at the statutory rate of 12%; provided, however, that if funds from the Escrow Account become available, such amounts will be applied pro rata between the Class 3 and Class 4 claims and will be applied to payments in inverse order of maturity..

9

4.04.05   Class 4 is impaired.

4.05  **Class 5—Secured Claim of Texas First Bank**

4.05.01   Class 5 consists of the Secured Claim of Texas First Bank. The Debtor has scheduled the Claim of Texas First Bank in the amount of $1,543,797.59.

4.05.02   Class 5 shall retain its liens. Unless the Court determines otherwise, the Class 5 creditor shall be deemed to hold the second priority secured claim against the Debtor's real and personal property. The Class 5 claim shall be treated as Oversecured.

4.05.03   The Claim of Texas First Bank shall accrue interest at a rate of 4.25%.

4.05.04   The amount of the Class 5 claim shall be determined as of the Confirmation Date, including any post-petition interest and allowed post-petition fees and charges less adequate protection payments made.

4.05.05   The Debtor shall make monthly payments of principal and interest based upon a 25 year amortization and an interest rate of 4.25% to the Class 5 creditor for five years with the first payment due on the 15th day of the month following the Effective Date. After five years, the Debtor shall begin making payments based upon a 20 year amortization and an interest rate of 4.25%. All principal and interest shall be due and payable in a balloon payment 120 months after the Effective Date.

4.05.05   Class 5 is impaired.

4.06  **Class 6—Secured Claim of Texas Certified Development Group/Small Business Administration**

4.06.01   Class 6 consists of the Secured Claim of Texas Certified Development Group and/or the Small Business Administration. The Debtor has scheduled the claim of Texas Certified Development Group in the amount of $897,467.43.

4.06.02   The Class 6 creditor shall retain its liens. Unless the Court determines otherwise, the Class 6 creditor will be deemed to hold the third priority lien upon the Debtor's real and personal property. The Class 6 creditor will be treated as an Oversecured Claim.

4.06.03   The amount of the Class 6 claim shall be determined as of the Confirmation Date, including any post-petition interest and allowed post-petition fees and charges. The Class 6 claim shall bear interest at the contract rate of 2.89868% per annum. The Debtor shall make monthly payments of interest only to the Class 6 creditor for three years with the first payment due on the 15th day of the month following the Effective Date. After three years, the Debtor shall begin making payments based upon a 360 month amortization and an interest rate of 2.89868%. All principal and interest shall be due and payable 120 months after the Effective Date.

4.06.04     Class 6 is impaired.

4.07     **Class 7—Secured Claim of Westport Group, Inc.**

4.07.01     Class 7 consists of the Secured Claim of Westport Group, Inc.     The Debtor has scheduled the claim of Westport Group, Inc. at $268,536.78.  The claim of Westport Group, Inc. is disputed.

4.07.02     The Debtor shall pursue its appeal of the judgment held by the Class 7 creditor in the Texas state courts.   The Debtor shall establish an escrow account with Georgetown Title Company or such other licensed, certified title company as the Debtor shall select.  Until such time as the judgment in favor of Westport Group, Inc. is affirmed by a final order which cannot be further appealed or the Debtor and the Class 7 creditor reach a binding agreement as to the amount and allowability of the claim, the Debtor shall make the payments required by this Plan into the escrow account.

4.07.03     The Class 7 creditor shall retain its liens to the same extent and validity as they existed prior to the Petition Date.  Unless the Court determines otherwise, the Class 7 creditor's lien shall be deemed to be a fourth priority lien upon the Debtor's real property only. The Debtor has filed a Motion to Determine Secured Status.  Payments upon the Class 7 secured claim shall be based upon the Allowed Secured Claim determined by the Court.  In the event that the Court determines that Westport Group does not hold a secured claim, its mechanic's lien and judgment lien shall be determined to be avoided, canceled and of no further force and effect. The remaining portion of the claim owed to Westport Group, Inc. shall be a Class 8 unsecured claim.

4.07.04     The Secured Claim of the Class 7 creditor shall bear interest at the rate of 4.25% per annum.     The Debtor shall make monthly payments of principal and interest to the Class 7 creditor based upon the Allowed Secured Claim, an amortization of 240 months and an interest rate of 4.25% with a balloon payment due after 120 months.  In the alternative, the Class 7 creditor may elect to convert its claim to equity in the Debtor according to the formula set forth in paragraph 4.08.04 below (although its equity interest will be held in escrow pending allowance or denial of the pending appeal).

4.07.05     Class 7 is impaired.

4.08     **Class 8—General Unsecured Claims**

4.08.01     Class 8 consists of Allowed Unsecured Claims against TCW other than the Claim of the Board of Regents of the University of Texas.

4.08.02     The Class 8 creditors may elect either the Cash Option or the Equity Option as set forth below.  The election must be made by the deadline for voting upon the Plan. In the absence of a timely election, the Class 8 creditors shall receive the Cash Option.

11

4.08.03     For a creditor who elects the Cash Option or is deemed to have elected the Cash Option, the Creditor shall receive a payment equal to 10% of the amount of its Allowed Claim on the later of 30 days after the Effective Date or the date upon which the Claim becomes an Allowed Claim; provided that, if a claim is the subject of an appeal in a non-bankruptcy court, the Claim shall be deemed to be an Allowed Claim at such time as a Final Order is entered on the appeal.  Such payment shall constitute full and complete satisfaction of both the creditor's Allowed Claim and the underlying debt.

4.08.04     For a creditor who elects the Equity Option, the creditor shall receive shares of stock in the Debtor with a percentage interest in the total equity of the Debtor based upon the amount of its Allowed Claim divided by 3,000,000.  Thus, if a creditor held an Allowed Claim in the amount of $300,000, it would receive equity in the Reorganized Debtor equal to 10% of the outstanding equity.  In the event that a creditor holds a claim which is subject to a timely objection by the Debtor or which is subject to a pending appeal in a non-bankruptcy court, the shares attributable to such creditor's alleged claim shall be held in trust by the Debtor pending the claim becoming an Allowed Claim pursuant to a Final Order; provided, that if a claim is the subject of an appeal in a non-bankruptcy court, the Claim shall be deemed to be an Allowed Claim at such time as a Final Order is entered on the appeal.  Such conversion to equity shall constitute full and complete satisfaction of both the creditor's Allowed Claim and the underlying debt.

4.08.05     Class 8 is impaired.

4.09     **Class 9—Claim of the Board of Regents of the University of Texas**

4.09.01     Class 9 consists of the Allowed Claim of the Board of Regents of the University of Texas.   The Board of Regents has filed a proof of claim in the amount of $78,227.09.   The Board of Regents also has unliquidated claims for injunctive relief.

4.09.02     The Debtor shall cover the windows on the lower and middle sections of the tower in a manner to be agreed upon with the Board of Regents within twelve months from the Effective Date.

4.09.03     The Board of Regents shall reduce the amount of its Claim to $51,000.00 upon completion of the changes referenced in para. 4.09.02 above.

4.09.04     The Debtor shall covenant not to light the tower in orange lights.  The Debtor shall further covenant not to re-install the original cupola upon the tower.

4.09.05     The Debtor shall make three annual payments of $17,000.00 to the Board of Regents.

4.09.06     The Debtor and the Board of Regents shall each dismiss their respective appeals in the underlying appeal from the Judgment of the U.S. District Court.  The Debtor and the Board of Regents shall further agree to withdraw all pending motions in the U.S. District Court.

12

4.09.07     Robert Tesch and Tesch & Associates shall continue to be liable upon the debt to the Board of Regents as modified herein.   The Board of Regents shall not seek to enforce such debt so long as the Debtor complies with this Plan.

4.09.08     Upon satisfactory completion of the changes required under para. 4.09.02 and payment of the financial amounts contained in para. 4.09.05, the Board of Regents shall release the damages portion of its Judgment as to all Defendants.

4.09.09     The Class 9 creditor is impaired.

### 4.10     **Class 10—Ownership Interest of TCW**

4.10.01     Class 10 consists of the Ownership Interest of TCW.  The stock of Tower Car Wash, Inc. is owned by Robert E. Tesch, Sandra L. Tesch and Tesch & Associates, Inc.

4.10.02     The existing shareholders of the Debtor shall be re-issued stock equal to the percentage interest which is not issued to the Class 7 and 8 creditors as set forth above.

4.10.03     Class 10 is not impaired.

### ARTICLE V
### MEANS FOR IMPLEMENTATION OF PLAN

5.01     **Source of Funds.**  The Debtor may fund its Plan from the following sources:

   a.   Revenues generated from operation of the Debtor's property.
   b.   Revenues generated from sale of the Debtor's property.
   c.   The funds held pursuant to the Escrow Agreement dated July 29, 2011.

5.02     **Sale of Debtor's Property.**  The Debtor may sell its property and its business at any time during the pendency of this Plan.  The Debtor may sell its property free and clear of liens so long the sales proceeds exceed the amount of all liens.  The Debtor shall not be required to pay any pre-payment penalty in the event of a sale.  In the alternative, the Debtor may sell its property subject to the liens addressed by this Plan in which case the purchaser shall assume the payment terms provided herein.  In the event that the claim of Westport Group, Inc. has not been finally allowed on the date of any sale, the proceeds or payments attributable to the alleged claim of Westport Group, Inc. shall be paid into the Escrow account set forth in paragraph 4.07.02 above.

5.03     **Use of Funds Held Pursuant to Escrow Agreement.**  In the event that the lien of Westport Group, Inc. is avoided or canceled or the Debtor and Westport Group, Inc. reach an agreement in writing for distribution of the funds in the Escrow Account, Independence Title shall disburse the remaining funds contained in the Escrow established pursuant to the Escrow

13

Agreement dated July 29, 2011 first to pay the Allowed Claims in Classes 3 and 4 and then to the Debtor.  All parties shall hold Independence Title harmless for complying with the requirements of this Plan.

5.04   **Re-Capitalization of Debtor.**   The existing shares of the Debtor shall be canceled.  The Reorganized Debtor shall issue 30,000 shares of stock.   Shares shall be issued to the Class 7 and Class 8 creditors who timely elect the Equity Option as set forth above.   The remaining shares to be issued shall be divided between the Debtor's existing shareholders in the ratio of 50% of the remaining shares to Robert Tesch, 40% of the remaining shares to Sandra Tesch and 10% to Tesch and Associates.

5.05   **Post-Confirmation Management of the Debtor.**  The Reorganized Debtor shall have not less than one nor more than three directors.  Unless the shareholders vote otherwise, the Debtor shall have one director.  The initial director of the Reorganized Debtor shall be Robert Tesch.

5.06   **Escrow for Taxes.**   Each month, the Debtor shall escrow 1/12 of the amount of the prior year's *ad valorem* taxes in a segregated account.   The Debtor may use such funds only for payment of ad valorem taxes so long as any of the claims provided for under this Plan remain unpaid.

5.07   **Appeal.**   The Debtor shall promptly proceed with its appeals of the judgment in the following action:

a.   Case No. 11-506-C368, Westport Group, Inc. v. Tower Car Wash, Inc.

The Debtor is authorized to employ and compensate counsel for the purpose of pursuing these appeals and to pay all costs associated therewith.

5.08   **Methodology for Disbursement Under the Plan**

Disbursements shall be made by the Debtor.   The Debtor shall be responsible for payment of claims under this Plan and for operating its business as set forth herein.

**ARTICLE VI**
**TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

6.01   **Reservation of Rights.**   Debtor shall have the right to assume or reject, pursuant to 11 U.S.C. § 365, prior to the Confirmation Date, any executory contract or unexpired lease of non-residential real property (to the extent permitted under the Bankruptcy Code).

14

6.02    **Assumption of Executory Contracts and Unexpired Leases.**  Debtor shall assume, pursuant to 11 U.S.C. § 1123(b)(2), the following Unexpired Leases of Non-Residential Real Property and Executory Contracts:

6.02.01        Debtor will assume the following executory contracts and unexpired leases:

      a.  Management Agreement with Tesch & Associates, Inc.
      b.  Video surveillance and alarm system agreement with ADT, Inc.
      c.  Software agreement with DRB Systems, Inc.

Debtor does not anticipate owing any cure payments in order to assume these leases and contracts.

6.03    **Rejection of Executory Contracts and Unexpired Leases.**  Debtor shall reject, pursuant to 11 U.S.C. § 1123(b)(2), the following Unexpired Leases of Non-Residential Real Property and Executory Contracts:

TCW shall reject any contracts or leases not listed above.

6.04    **Bar Date for Claims Based on Rejection.**  If the rejection of any executory contract or an unexpired lease by the Debtor results in damages to the other party or parties to such contract or lease, a Claim for such damages shall be forever barred and shall not be enforceable against the Debtor or their properties or agents, successors or assigns unless a Proof of Claim is filed with the Court and served by the Debtor in the time period set forth in Section 3.05.

6.05    **Limitation on Claims Based on Rejection.**  Any Rejection Claim based upon the rejection of an unexpired lease of real property either prior to the Confirmation Date or upon the entry of the Confirmation Order shall be limited in according with 11 U.S.C. §502(b)(6) and state law mitigation requirements.  Nothing contained herein shall be deemed an admission by the Debtor that such rejection gives rise to or results in a Claim or shall be deemed a waiver by the Debtor of any objection to such Claim, if asserted.

### ARTICLE VII
### PROVISIONS FOR THE RETENTION, ENFORCEMENT, SETTLEMENT, OR ADJUSTMENT OF CLAIMS BELONGING TO THE DEBTOR AND THE ESTATE INCLUDING PREFERENCES AND CONVEYANCES

7.01    **Avoidance Actions.**    There are three types of actions established by the Bankruptcy Code for the benefit of Debtor:  actions to recover avoidable preferences under 11 U.S.C. § 547, actions to recover fraudulent conveyances under U.S.C. § 548 and actions to recover unauthorized post-petition transfers under U.S.C. § 549.

7.01.01        **Preferences.**    Section 547 allows a Debtor-in-Possession to recover "voidable preferences"—*to wit,* payments made within ninety (90) days prior to bankruptcy (or

15

within one (1) year if made to an insider) on an antecedent debt while the Debtor is insolvent which allows a creditor to recover more than it would have if the payment had not been made and the Debtor's assets were liquidated under Chapter 7. Certain payments are protected from recovery as preferences. These include payments made in the ordinary course of business or upon ordinary business terms and payments representing a substantially contemporaneous exchange. The Debtor is not aware of any claims under section 547.

7.01.02 **Fraudulent Conveyances and Post-Petition Transfers Made Without Court Approval.** Section 548 allows a Debtor-in-Possession to recover certain a transfers made within one year of Petition Date while the Debtor was insolvent which either was made with fraudulent intent or was made without receiving reasonably equivalent value. Section 549 allows a Debtor-in-Possession to recover post-petition transfers which were made without court approval. The Debtor is not aware of any claims under sections 548 or 549.

7.02 **Other Actions.** The Debtor shall be authorized to pursue its appeals of the Board of Regents and Westport Group, Inc. judgments.

## ARTICLE VIII
### EFFECT OF CONFIRMATION

8.01 **Discharge.** Pursuant to 11 U.S.C. §§ 524 and 1141(d), TCW shall be discharged from its debts upon the substantial consummation of this Plan.

8.02. **Status of Property of the Estate After Confirmation.** Confirmation of the Plan shall vest the Property of the Estate in the reorganized Debtor free and clear of all claims and liens except as expressly provided in the Plan; provided that if the Plan is not substantially consummated, the property of the Estate shall revest in the Estate upon conversion to chapter 7 or entry of an order revoking confirmation of the Plan.

8.03. **Binding Nature of Plan.** Pursuant to 11 U.S.C. § 1141, the provisions of the confirmed Plan shall bind the Debtor and its Creditors and the holders of its Equity Securities existing as of the Effective Date, whether or not the Claim or Equity Interest is impaired under the Plan and whether or not such Creditor or Equity Interest Holder has accepted the Plan. The distributions provided for Claimants shall not be subject to any Claim by another creditor or interest holder by reason of any assertion of a contractual right of subordination.

8.04. **Permanent Injunction.** Confirmation of the Plan shall result in the issuance of a permanent injunction against the commencement or continuation of any judicial, administrative, or other action or proceeding on account of any Claims against the Debtor and any other entity against whom prosecution of any claim could result in a Claim being asserted against the Debtor that could arise directly or indirectly out of a claim against the Debtor. From and after the Confirmation Date, all holders of Claims against the Debtor are permanently restrained and enjoined (a) from commencing or continuing in any manner, any action or other proceeding of any kind with respect to any such Claim against the Debtor, its Assets, or against its financial advisors or attorneys; (b) from enforcing, attaching, collecting, or recovering by any manner or

16

means, any judgment, award, decree, or order against the Assets or the Debtor or against its financial advisors or attorneys; (c) from creating perfecting, or enforcing any encumbrance of any kind against the Assets of the Debtor or against its financial advisors or attorneys; (d) from asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due to the Debtor; and (e) from performing any act, in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan; provided however, that creditors may continue to litigate any timely filed contested claims and all parties may seek to enforce the obligations of this Plan.

## ARTICLE IX
## MODIFICATION OF PLAN

9.01    **Modification to the Plan Prior to Confirmation.**  In accordance with 11 U.S.C. § 1127 and Fed R. Bankr. P. 3019, to the extent applicable, Debtor may modify or amend the Plan prior to the Confirmation Date, provided that notice and an opportunity for hearing are given to any affected party and the Court finds that the proposed modification or correction does not adversely change the treatment of the claim of any creditor or the interest of any equity security holder who has not accepted the modification in writing.

## ARTICLE X
## POST-CONFIRMATION PROCEDURE

10.01. **Application for Final Decree.**  The Debtor shall file an application for final decree not later than one hundred twenty (120) days after the Confirmation Date; provided that such deadline may be extended for cause shown.  If the Debtor fails to file an Application for Final Decree prior to such deadline or fails to timely request an extension of the same, then the Court, on its own motion or at the request of any party in interest, including the United States Trustee, may enter an order closing the Debtor's case.

10.02. **U.S. Trustees Matters.**

10.02.01        **Fees.**  The Debtor shall continue to pay U.S. Trustee fees until the case is converted, dismissed or closed.

10.02.02.        **Reports.**  The Debtor shall file post-confirmation reports in the form prescribed by the United States Trustee until the case is converted, dismissed or closed.

## ARTICLE XI
## DEFAULT AND OTHER RELATED PROVISIONS

11.01. **General.**  In the event of a default by the Debtor under the Plan, creditors may exercise any rights granted to them under documents executed to evidence the Plan or any rights available to creditors under applicable non-bankruptcy law.  In the absence of documents

17

executed to evidence the Plan, this Plan may be enforced as a contract. Notwithstanding any other provision, any creditor alleging a default shall give the Debtor and Debtor's counsel twenty-eight (28) days' notice and an opportunity to cure before exercising any rights available upon default.

11.01.01. In the event of a default by a creditor, the Debtor may enforce this plan as a contract in a court of competent jurisdiction. The Debtor may escrow payments to any creditor which defaults under the Plan until the default is cured. The Debtor shall give the creditor twenty-eight (28) days' notice and an opportunity to cure before exercising this provision.

11.01.02. Conversion to Chapter 7 shall be an additional remedy for default prior to Substantial Consummation.

## ARTICLE XII
### RETENTION OF JURISDICTION

Notwithstanding confirmation of the Plan or the Effective Date having occurred, the Court will retain jurisdiction for the following purposes:

12.01 **Allowance of Claims.** To hear and determine the allowability of all Claims upon objections to such Claims.

12.02 **Proceedings Related to Executory Contracts and Unexpired Leases.** To act with respect to proceedings regarding the assumption of any executory contract or unexpired lease of the Debtor pursuant to 11 U.S.C. §§ 365 and 1123 of the Code and Article VI of the Plan.

12.03 **Plan Interpretation.** To resolve controversies and disputes regarding the interpretation of the Plan.

12.04 **Plan Implementation.** To implement and enforced the provisions of the Plan and enter orders in aid of confirmation and implementation of the Plan.

12.05 **Plan Modification.** To modify the Plan pursuant to 11 U.S.C. § 1127 and applicable Bankruptcy Rules, except that no modification shall be made to the Plan that would impair, diminish or affect in any way the rights of the participants of any of the Classes of the Plan without the consent of such class.

12.06 **Adjudication of Controversies.** To adjudicate such contested matters and adversary proceedings as may be pending or subsequently initiated in the Court against the Debtor.

12.07 **Injunctive Relief.** To issue any injunction or to other relief as appropriate to implement the intent of the Plan, and to enter such further orders enforcing any injunction or other relief issued under the Plan or in the Confirmation Order.

18

12.08 **Interpleader Action.** To entertain Interpleader actions concerning assets to be distributed or other assets of the Estate.

12.09 **Correct Minor Defects.** To correct any defect, cure any omission or reconcile any inconsistency or ambiguity in the Plan, the Confirmation Order or any document executed or to be executed in connection therewith, as may be necessary to carry out the purposes and intent of the Plan, provided that the rights of any holder or an Allowed Claim are not materially and adversely affected thereby.

12.10 **Authorization of Fees and Expense.** To review and authorize payment of professional fees incurred prior to the Effective Date.

12.11 **Post-Confirmation Orders Regarding Confirmation.** To enter and implement such orders as may be appropriate in the event the Confirmation Order is, for any reason, stayed, reversed, revoked, modified, or vacated.

12.12 **Final Decree.** To enter a final decree closing the Case pursuant to Fed. R. Bankr. P. 3022.

12.13 **Reopening.** The Court will also retain jurisdiction as set forth above if the case is closed and then reopened.

## ARTICLE XIII
### MISCELLANEOUS PROVISIONS

13.01 **Request for Relief Under 11 U.S.C. § 1129(b)**. In the event any impaired Class shall fail to accept this plan in accordance with 11 U.S.C. § 1129(a), Debtor reserves the right to, and does herby request the Court confirm the Plan in accordance with 11 U.S.C. §1129(b).

13.02 **Revocation.** The debtor reserves the right to revoke and withdraw this plan at any time prior to the confirmation Date.

13.03 **Effect of Withdrawal or Revocation.** If the Debtor revokes or withdraws this Plan prior to the Confirmation Date or the Effective Date does not occur, then this Plan shall be deemed null and void. In such event, nothing contained herein shall be deemed to constitute a waiver or release of any claims by or against the Debtor or any other person or to prejudice in any manner the rights of the Debtor or any person in any further proceedings involving the debtor.

13.04 **Entire Agreement**. The Plan, as described herein, the Confirmation Order, and all other documents and instruments to effectuate the Plan provided for herein, constitute the entire agreement and understanding among the parties hereto relating to the subject matter hereof and supersedes all prior discussions and documents.

19

13.05  **Section 1146 Exemption.**  Pursuant to 11 U.S.C. § 1146(c), the issuance, transfer or exchange of any security under this Plan or the making or delivery of any instrument or transfer pursuant to, in implementation of or as contemplated by this Plan or the transfer of any property pursuant to this plan shall not be taxed under any federal, state, or local law imposing a stamp, transfer or similar tax or fee.

13.06  **Provisions Governing Distributions.**

13.06.01  All payments and distributions under the Plan shall be made by the Debtor as indicated.  Any payments or distributions made by the Debtor pursuant to the Plan or as may be ordered by the Bankruptcy Court, to the extent delivered by the United States Mail, shall be deemed made when deposited into the United Sates mail.

13.06.02  Payments of cash to be made by the Debtor pursuant to the Plan shall be made by check drawn on a domestic bank or by wire transfer from a domestic bank.

13.06.03  Distributions and deliveries to holders of Allowed Claims shall be made at the addresses set forth the on the proofs of claim or proofs of interest filed by such holders (or at the last known addresses of such holders if no proof of claim or proof of interest is filed) unless Claimant files with the Court and serves the Debtor with a change of address.  All claims for undeliverable distributions shall be made on or before the second anniversary of the effective date.  After such date, all unclaimed property shall remain the property of the debtor and the claim of any other holder with respect to such unclaimed property shall be discharged and forever barred.

13.07.04  Checks issued by the debtor in respect of allowed claims shall be null and void if not cashed within ninety (90) days of the day the of delivery thereof.  Requests for reissuance of any check shall be made directly to the Debtor by the holder of the Allowed Claim to who such check originally was issued.  Any claim in respect of such a voided check shall be made within one-hundred eighty (180) days after the date of delivery of such check.  After such date, all claims in respect of void checks shall be discharged and forever barred, and the amount of such checks shall become Unclaimed Property and returned to the debtor.

13.07.05  No interest shall be paid on any Claim unless, and only to the extent that, the Plan specifically provides otherwise.

13.08  **Governing Law.**  Unless a rule or law or procedure supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) is applicable, or a specific choice of law provision is provided, the internal laws of the State of Texas shall govern the construction and implementation of the plan and any agreements, documents, and instruments executed in

20

connection with the plan, without regard to conflicts of law.

13.09 **Post-Confirmation Noticing.** Subsequent to the Confirmation Date, the Debtor shall not be required to give notice to any creditor whose claim has been disallowed. Except for the Application for Final Decree, if a party is required to give notice in connection with a notice, pleading or application, such notice shall be deemed sufficient if it is sent to: (a) the Debtor; (b) the attorney for the Debtor; (c) all Secured Creditors; and (d) unsecured creditors requesting notice.

Respectfully submitted,

**TOWER CAR WASH, INC.**

By: _Robert E. Tesch_

Robert Tesch, President

**BARRON & NEWBURGER, P.C.**
1212 Guadalupe, Suite 104
Austin, Texas 78701
(512) 476-9103 Ext. 220
(512) 476-9253 (Facsimile)

By: /s/Stephen W. Sather
Barbara M. Barron
State Bar No. 01817300
Stephen W. Sather
State Bar No. 17657520

ATTORNEYS FOR DEBTOR-IN-POSSESSION

21